**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

KEONDRA M. CHESTANG,    *
ADC #134005,       *
            *
     Plaintiff,    *
v.           *
            *  No. 5:11-cv-00225-SWW-JJV
VARNER SUPER MAX, Classification *
Committee, *et al*;      *
            *
     Defendants.   *

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

   The following recommended disposition has been sent to United States District Judge Susan Webber Wright.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

   If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

   1.   Why the record made before the Magistrate Judge is inadequate.

   2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing

1

is granted) was not offered at the hearing before the Magistrate Judge.

      3.      The details of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-

testimonial evidence desired to be introduced at the hearing before the District Judge.

      From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.  Mail your

objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.    INTRODUCTION

      Before the Court is Defendants' Motion to Dismiss (Doc. No. 47).  Mr. Chestang has filed

a Response (Doc. No. 60).

      According to his Amended Complaint (Doc. No. 13), Mr. Chestang was involved in an

altercation with an East Arkansas Regional Unit employee in September 2008, convicted of a

disciplinary charge, and transferred to Varner Super Max (VSM) for a behavior modification

program.  He completed the program on February 2, 2011, but remained in administrative

segregation. On June 17, 2011, he was transferred to the Maximum Security Unit administrative

segregation, and remained there after a classification committee appearance in August 2011.

      Mr. Chestang alleges due process violations regarding the disciplinary conviction and

placement in a behavior program.  He also alleges continued unlawful incarceration in

administrative segregation without meaningful reviews, in violation of his due process rights. Plaintiff seeks monetary damages and injunctive relief from Defendants.

On January 30, 2012, the Court dismissed Plaintiff's claims for damages and injunctive relief based on his disciplinary conviction (Doc. No. 53), and dismissed Defendants Drayer, Varner Super Max Classification Committee and Tucker Maximum Security Unit Classification Committee. (*Id.*)

## II.     MOTION TO DISMISS

FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corporation v. Twombly*[1], the Supreme Court stated, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....Factual allegations must be enough to raise a right to relief above the speculative level."[2] A complaint must contain enough facts to state a claim to relief that is plausible on its face.[3]

In paragraph four of the Motion, Defendants ask the Court to dismiss unrelated claims asserted in the Amended Complaint (Doc. No. 13) concerning prison officials at different units. But in his Response, Plaintiff states his suit concerns *only* these three issues which were raised in his Amended Complaint: 1) his unlawful commitment to the behavior modification program; 2) his unlawful confinement in administrative segregation; and 3) double jeopardy violations and "cruel and atypical inflictions" resulting from the first two issues (Doc. No. 60 at 3, 13, 14). Accordingly,

---

[1]550 U.S. 544, 555 (2007) (overruling *Conley v. Gibson*, 355 U.S. 41 (1967), and setting a new standard for failure to state a claim upon which relief may be granted).

[2]*Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).

[3]*Twombly*, 550 U.S. at 570. *See also Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

the Court has analyzed Plaintiff's three claims as stated above and comes to the following conclusions.

### A.      Official Capacity Claims

Defendants state that Plaintiff's monetary claims against them in their official capacities should be dismissed pursuant to sovereign immunity, citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-66 (1989), and *Thomas v. Gunter,* 32 F.3d 1258, 1261-2  (8th Cir. 1994).  Plaintiff agrees in his Response, stating he never intended to sue Defendants in their official capacities for monetary relief (Doc. No. 60 at 7).    Therefore, Plaintiff's official capacity claims should be DISMISSED.

### B.      Due Process

####       1.      Behavior Modification Program

Defendants state Plaintiff fails to allege a due process claim for relief concerning placement in the behavior program at VSM.   They cite *Proctor v. Toney*, where the Court noted that the VSM program is an "incentive-level program whereby inmates who demonstrate good conduct are promoted to higher incentive levels with increased privileges until they reach incentive level five, at which time they become eligible to transfer from VSM."[4]   Defendants also cite several cases where an inmate's assignment to behavior control confinement did not implicate a liberty interest.[5]

---

[4]53 Fed. Appx. 793, 794  n.1, 2002 WL 31780046 (8th Cir. 2002).

[5]*See Byrd v. Arias*, 411 Fed. Appx. 105, 106, 2011 WL 196174 (9th Cir. 2011) (where inmate failed to allege facts to show that his placement in the behavior modification program resulted in a "significant hardship on the inmate in relation to the ordinary incidents of prison life," (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Knowlin v. Heise*, 420 Fed. Appx. 593, 596, 2011 WL 1625432 (7th Cir. 2011) (where the inmate failed to show that his classification as substance-dependant deprived him of a constitutionally-protected liberty interest); and *Griggs v. Norris*, 297 Fed. Appx. 553, 2008 WL 4821633 (8th Cir. 2008) (where an inmate's transfer to a super max unit

Defendants note that Plaintiff appeared before the VSM classification committee prior to placement in the program, and he does not allege he was denied the opportunity to participate in the hearing or object to placement. Plaintiff responds that the propriety of his placement in the program is a mixed question of law and fact which should not be determined until all evidence is gathered.

This Court notes that Plaintiff has a due process liberty interest in his confinement only if it presents circumstances which are atypical and significant from the ordinary incidents of prison life. *Sandin,* 515 U.S. at 486. In determining whether his restrictions are atypical and significant, the court should consider the effect of the segregation on the length of prison confinement, the extent to which the conditions differ from other prison conditions, and the duration of the segregation imposed. *Id.* at 484. The United States Court of Appeals for the Eighth Circuit held that administrative and disciplinary segregation are not the kind of atypical and significant deprivations which create a liberty interest under *Sandin*.[6] In addition, the court held that an assignment to in-house segregation status for over two years did not create a liberty interest.[7]

Plaintiff does not allege any facts to support a claim that his placement in the behavior program violated a liberty interest. He states only that the program "imposed multiple restraints...such as, but not limited to; commisary (sic) purchases, phone, visitation, education, television viewing, etc." (Doc. No. 13 at 8).

did not violate due process, since he received notice of the placement hearing, together with reasons for his placement).

[6]*Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002) (no liberty interest in thirty-days' disciplinary confinement); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (no liberty interest in ten days confinement to ad seg); and *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (no liberty interest in thirty days' disciplinary confinement).

[7]*Rahman X. v. Morgan*, 300 F.3d 970 (8th Cir. 2002).

More importantly, Plaintiff admits in his Amended Complaint that he appeared before the classification committee prior to his placement in the program, and does not allege he was denied the opportunity to speak at that hearing.[8]  In addition, his allegations concerning the restraint of privileges are too vague to state a claim that he suffered deprivations considered atypical or significant from the ordinary incidents of prison life.  Therefore, the Court finds that Plaintiff fails to state a constitutional claim regarding his placement in the behavioral modification program.

2.      Administrative Segregation

Defendants state that Plaintiff fails to state a due process claim for relief concerning his February 2011 placement in administrative segregation.  First, they rely on Eighth Circuit case law as set forth above, holding that restrictions associated with administrative or disciplinary confinement are not atypical and significant deprivations which create a liberty interest under *Sandin*.  Next, they note that Plaintiff has been confined in administrative segregation for about one year, and does not allege a liberty interest.  Finally, Defendants state Plaintiff does not allege he was denied the opportunity to speak at his classification committee review hearings, and the attachments to his Amended Complaint show that he appeared before those committees on several occasions. Plaintiff again responds that whether he has identified a liberty interest is a question of fact, and his classification reviews were not meaningful because his continued segregation was based on the September 2008 incident.

In *Sandin*, the Court identified three factors which the courts should consider in determining whether an inmate's restrictions are atypical and significant – the effect of the segregation on the length of prison confinement, the extent to which the conditions differ from other prison conditions, and the duration of the segregation imposed.  515 U.S. at 484.   In *Rahman X.*, the court found that

the inmate's placement in segregation for twenty-six months did not create an atypical and significant hardship in relation to the ordinary incidents of prison life. 300 F.3d at 973. The Supreme Court noted that although plaintiff complained about a lack of access to television and commissary, and deprivation of outdoor yard privileges, such conditions did not render his confinement atypical and significant and did not violate the Eighth Amendment.

At the time he filed this action, Mr. Chestang had been in administrative segregation for seven months. Based on the case law cited above, administrative segregation for this period of time does not support a finding of a liberty interest. In addition, he does not allege any specific conditions in administrative segregation which could be considered an atypical and significant hardship. Rather, he states that he lost "many liberty interests...that he'd otherwise have in general population..." He does not, however, identify those liberty interests. (Doc. No. 13 at 11.) The Court also is mindful that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482. Therefore, based on the allegations in his Amended Complaint, the Court finds that Plaintiff's confinement in administrative segregation did not present a atypical and significant hardship to create a liberty interest under the due process clause.[8]

## III.    STATUTE OF LIMITATIONS

Defendants state the allegations concerning placement in the behavior program in September

_____

[8]Because the Court finds no atypical and significant hardship, it need not address Defendants' additional arguments that they provided due process to the Plaintiff during his classification reviews. *But see*, *Williams v. Hobbs*, 662 F.3d 994 (8th Cir. 2011), where the Court held that when confinement is deemed atypical and significant within the meaning of *Sandin*, "meaningful" due process is required, which includes apprising the inmate of the reasons surrounding a decision that he poses a threat to the security and good order of the institution. *Id*. at 1009.

2008 should be dismissed, as barred by the applicable three-year statute of limitations.[9]  Defendants

base their argument on Plaintiff's Amended Complaint filed November 15, 2011.  In response,

Plaintiff states the limitations period was tolled while he exhausted his administrative remedies

through the ADC grievance process.[10]

The Court finds that Plaintiff's allegations are not barred by the three-year statute of

limitations.  Plaintiff filed his original Complaint on August 31, 2011 (Doc. No. 1).  According to

FED. R. CIV. P. 15(c)(2), an amendment to a pleading relates back to the date of the original pleading

when the "amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out – or attempted to be set out – in the original pleading."  In this case, on October

21, 2011, the Court invited Plaintiff to file an Amended Complaint to clarify his allegations against

the defendants (Doc. No. 10), which he did. Therefore, the Court finds that the Amended Complaint

relates back to the filing date of the original Complaint, August 31, 2011, and Defendants' statute

of limitations argument must fail.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion to Dismiss (Doc. No. 47) be GRANTED;

2.    Plaintiff's cause of action be DISMISSED with prejudice.

3.    This dismissal constitute a "strike" within the meaning of the Prison Litigation

---

[9]*Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001) (where the court held that claims filed pursuant to 42 U.S.C. § 1983 with respect to events occurring in Arkansas are subject to the three-year statute of limitations applicable to tort claims).

[10]*Gonzalez v. Hasty*, No. 097-1787-pr, 2011 WL 2463562 (2nd Cir. 2011) (where the court held that equitable tolling applies to the time period during which an inmate-plaintiff exhausts his administrative remedies pursuant to the PLRA.)

Reform Act (PLRA), 28 U.S.C. § 1915(g).[11]

IT IS SO ORDERED this 28th day of February, 2012.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[11] The statute provides that a prisoner may not file an *in forma pauperis* civil rights action or appeal if the prisoner has, on three or more prior occasions, filed an action or appeal that was dismissed as frivolous, malicious or for failure to state a claim, unless the prisoner is under imminent danger of serious physical injury.